IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:23-cv-00832-MR

| | |
|---|---|
| MARC HUBBARD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| Respondents. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's pro se Motion for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] and the Petitioner's Motion for Summary Judgment [Doc. 6].

**I.    BACKGROUND**

The pro se Petitioner was indicted in the United States District Court for the Eastern District of Pennsylvania in March 2015 in a fraudulent investment scheme, Case No. 2:15-cr-96 ("CR"). On June 30, 2016, he plead guilty straight up to one count of conspiracy to commit wire fraud and seven counts of wire fraud. [CR Doc. 53]. The Pennsylvania District Court imposed a sentence of 78 months' imprisonment, three years of supervised release, and $1.7 million in restitution in a Judgment entered on October 25,

2016.[1] [CR Doc. 86]. The Third Circuit Court of Appeals affirmed. United States v. Hubbard, 721 F. App'x 102 (3d Cir. 2018).

In 2019, the Petitioner filed a counseled Motion to Vacate pursuant to 28 U.S.C. § 2255. [CR Doc. 117]. The Pennsylvania District Court denied relief on March 29, 2022. [CR Doc. 133]. In addition, Petitioner was denied compassionate release for failure to exhaust his administrative remedies. United States v. Hubbard, 2020 WL 6828476 (E.D. Pa. Nov. 20, 2020). He was also denied home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) per § 2241 for failure to exhaust his administrative remedies. Hubbard v. Bradley, 2021 WL 4318028 (M.D. Pa. Sept. 23, 2021).

The Petitioner appears to have been released to home confinement in North Carolina on November 2, 2021 pursuant to a subsequent CARES Act petition. [Doc. 1-1 at 4, 15]. He emailed BOP regional counsel on April 3, 2023, requesting his "earned time credits [(ETC)][2] pursuant to the First Step

---

[1] On April 9, 2018, the Petitioner was sentenced to 57 months' imprisonment for wire fraud in the United States District Court for the District of Hawaii, Case No. 1:12-cr-1133. That sentence was to be served consecutively to any undischarged term of imprisonment. [See 1:12-cr-1133, Doc. 299].

[2] ETC are also referred to as Federal Time Credits (FTC), and these terms are sometimes used interchangeably. See Pasha v. Carter, No. 23-cv-2686, 2024 WL 4264904, at *1 n.1 (D.Md. Sept. 20, 2024); Hudson v. Streeval, No. 7:23-cv-137, 2024 WL 346521 (W.D. Va. Jan. 30, 2024).

2

Act [(FSA)]...." [Doc. 1-1 at 3]. The BOP responded the next day that the Petitioner had already received the maximum of 365 days of FSA credits, and that he may file a "remedy" if he feels he is entitled to additional credits. [Id.]. On April 6, 2023, the Petitioner submitted a Request for Administrative Remedy to the BOP, stating that he had received 365 FSA credits towards his release date, and seeking an "additional 355 FSA credits and any additional earned credits [to] be applied towards [his] supervised release date." [Id. at 2]. On May 9, 2023, the Petitioner filed a Regional Administrative Remedy Appeal after receiving no response from BOP. [Id. at 1]. The BOP denied his appeal on July 31, 2023, stating in pertinent part as follows:

> Our review revealed that your time credits are being applied pursuant to Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4). According to your FSA Time Credit Assessment, dated July 31, 2023, you have earned 365 days of [Federal Time Credit] toward early release and 430 days that may be applied toward community placement.
>
> Regarding your claim that the remaining FTC, in excess of the 365 days that has already been applied, should also be applied towards early release to supervision. Program Statement 5410.01 CN-2, also states, "The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred." You have already received the maximum benefit of FTC towards early release to supervised release. We note you have been on home confinement since

3

Case 3:23-cv-00832-MR   Document 9   Filed 10/21/24   Page 3 of 17

November 2, 2021. Based on the foregoing, we find no further relief is warranted.

[Id. at 15]. A Sentence Monitoring Computation Data printout for the Petitioner indicates that his statutory release date is Jun 1, 2026, that he has 365 days of "APPLIED FSA CREDITS," and that his projective release date is therefore June 1, 2025. [Doc. 5-1 at 1].

The Petitioner filed the instant § 2241 Petition on September 7, 2023.[3] [Doc. 1]. He argues that he was released to home custody pursuant to the CARES Act, rather than the FSA, and that the BOP violated due process by failing to apply 355 "remaining FSA credits" towards his sentence. [Id. at 1, 6]. He asks the Court to direct the BOP to apply 355 FSA credits so that he can begin to immediately serve his term of supervised release.

The Government concedes that the Petitioner has exhausted his administrative remedies and that he is "in custody" in this District, but argues that the Petition should be dismissed or denied because the Petitioner is not entitled to any further relief. [Doc. 5 at 4].

The Petitioner now moves for summary judgment. [Doc. 6]. He asks the Court to direct the BOP to grant him his "remaining FSA credits towards

---

[3] The Petitioner previously sought § 2241 relief in the U.S. District Courts for the District of New Jersey and in the Middle District of Pennsylvania, Case Nos. 2:19-cv-215, 1:19-cv-18058, and 3:20-cv-2233. These petitions were dismissed without prejudice.

[his] period of supervised release," to appoint him counsel, and to hold a hearing. [Id. at 8]. The Government opposes the Petitioner's Motion for Summary Judgment. [Doc. 8]. The Petitioner has not replied and the time to do so has expired.

## II. LEGAL STANDARDS

Under 28 U.S.C. § 2241, federal district courts are granted authority to consider an application for a writ of habeas corpus filed by a petitioner claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A claim for sentencing credit may be brought under § 2241 in the district of confinement. See United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989); Fontanel v. O'Brien, 807 F.3d 84, 87 (4th Cir. 2015).

Rule 4 of the Rules Governing Section 2254 Proceedings provides that courts are to promptly examine habeas petitions to determine whether the petitioner is entitled to any relief on the claims set forth therein. See Rule 1(a), (b), 28 U.S.C. foll. § 2254 (a district court may apply the rules for § 2254 proceedings to habeas petitions other than those filed under § 2254). Pro se pleadings are construed liberally. See generally Haines v. Kerner, 404 U.S. 519 (1972) (a pro se complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers).

5

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56).  The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial.  Id. at 323-24. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56).  The nonmoving party "may not rest upon the mere

6

Case 3:23-cv-00832-MR   Document 9   Filed 10/21/24   Page 6 of 17

allegations or denials of his pleading" to defeat a motion for summary judgment. Id. at 322, n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Id. at 599. A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Catrett, 477 U.S. at 322.

After examining the record in this matter, the Court finds that the § 2241 Petition and Petitioner's Motion for Summary Judgment can be resolved without an evidentiary hearing based on the record and the governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

Only the Attorney General, acting through the BOP, may administer a federal inmate's sentence. See 18 U.S.C. § 3621; United States v. Wilson, 503 U.S. 329, 335 (1992). This includes determining where an inmate

7

Case 3:23-cv-00832-MR   Document 9   Filed 10/21/24   Page 7 of 17

serves his sentence, determining when a prisoner is ready to transfer into prerelease custody or supervised release, and applying time credits. See 18 U.S.C. §§ 3621, 3632, 3624; Wilson, 503 U.S. at 335.

Under 18 U.S.C. § 3632(d)(4)(A), "[an eligible] prisoner … who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits," known as FSA Time Credits or "FTC," at a rate of "10 days time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" with the possibility to earn an additional 5 days per 30 days of successful participation. Id.; see BOP Program Statement 5220.01 (addressing FSA Program Incentives). The FTCs are applied toward prerelease custody or supervised release as follows:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C); see 28 C.F.R. § 523.40; BOP Program Statement 5220.01. In the case of supervised release, § 3624 provides as follows:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, **not**

8

> **to exceed 12 months**, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3) (emphasis added); see 28 C.F.R. § 523.44; BOP Program Statement 5410.01 CN-2 (BOP may apply FSA time credits toward early transfer to supervised release pursuant to § 3624(g) only when, *inter alia*, such would result in transfer to supervised release no earlier than 12 months before the date of transfer to supervised release would have otherwise occurred).

To the extent that the Petitioner complains about his release to home confinement, including the timing and basis for the same, these issues are moot because the Petitioner was released to home confinement in November 2021. See generally Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986) (discussing the mootness doctrine); see, e.g., Franklin v. Warden, FCI Bennettsville, No. 4:23-cv-6591, 2024 WL 4046245 (D.S.C. Aug. 14, 2024), *report adopted* 2024 WL 4045862 (D.S.C. Sept. 4, 2024) (finding as moot the § 2241 petitioner's request for home confinement where he had been provided the relief he requested); see also 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of a prisoner's imprisonment… [and] [n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court").

The Petitioner's request to apply additional credits so that he may begin serving his supervised release term immediately also fails.[4] The BOP has already credited Petitioner with 365 days of FSA credit. The Petitioner has received the maximum possible FSA credit that he may receive pursuant to the law and his claim for the application of additional credits is moot. See Adams v. Brown, No. 5:24-cv-51, 2024 WL 4169175 (N.D. W.Va. July 19, 2024), *report adopted* 2024 WL 3799421 (N.D.W. Va. Aug. 13, 2024) (dismissing as moot a petitioner's request for additional FSA credits towards release to supervised release, where the petitioner had already received the maximum possible credit of 365 days).

Even if the Petitioner's claims were not moot, they would fail on the merits. First, the Petitioner appears to contend that § 3632(d)(4)(C)[5] is unconstitutionally vague as applied to him because the language "shall be applied toward time in prerelease custody or supervised release" is impossible to carry out because he was already placed on home confinement

---

[4] The Petitioner does not appear to seek a reduction of his term of supervised release. [Doc. 1 at 6]. Were he to assert such a claim, it would be denied. See Guerriero v. Miami RRM, No. 24-10337, 2024 WL 2017730 (11th Cir. May 7, 2024) (noting that nearly every case to have addressed the issue has found that the FSA does not allow the term of supervised release to be decreased, collecting cases).

[5] Petitioner cites § 3632(d)(4)(A) but he quotes § 3632(d)(4)(C). [See Doc. 6 at 4].

10

via the CARES Act, and because there is a 12-month limit on FSA credits. [Doc. 6 at 4-5].

Considering the overall statutory language and the relevant regulations, it is evident that "Congress intended the time credits to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release." Guerriero v. Miami RRM, No. 24-10337, 2024 WL 2017730 (11th Cir. May 7, 2024) (citing 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(3), 28 U.S.C. § 523.44(b)). It is undisputed that this is precisely the relief that the Petitioner received when the BOP credited him with one year of credit towards commencing his term of supervised release. The Petitioner's unsupported desire to apply credits beyond the statutory limits does not demonstrate that the FSA is unconstitutional as applied to him.

The Petitioner's argument that BOP should have applied additional FSA credits toward home confinement fails because the BOP has discretion to designate the location of his confinement, including prerelease custody. See Wilson, 503 U.S. at 335 (only the Attorney General, acting through BOP, may administer a federal inmate's sentence, including where an inmate serves his sentence); Hicks v. Heckard, 5:23-cv-581, 2024 833190, at *6 (S.D.W. Va. Feb. 1, 2024), report adopted, 2024 WL 818472 (S.D.W. Va. Feb. 27, 2024) (prerelease custody merely changes the location where a

11

Case 3:23-cv-00832-MR   Document 9   Filed 10/21/24   Page 11 of 17

prisoner is serving his sentence). The BOP's application of FSA credits towards his prerelease custody is a classification decision in which the Petitioner has no liberty interest and which is not subject to judicial review. See generally 18 U.S.C. § 3621(b) (BOP shall designate the place of a prisoner's confinement and "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court"); 18 U.S.C. § 3625 (the Administrative Procedures Act does "not apply to the making of any determination, decision, or order" under § 3621); Moody v. Daggett, 429 U.S. 78, 88 (1976) (there is no liberty interest in a prison custody or security classification); see, e.g., Hicks, 2024 WL 833190 (BOP's discretionary authority regarding whether and when to release a prisoner into prerelease custody under § 3624(g) are entitled to substantial deference and are not subject to judicial review); Smith v. Warden, FCI Beckley, No. 5:23-cv-360, 2024 WL 832879, at *5 (S.D.W.Va. Feb. 1, 2024), recommendation adopted, 2024 WL 817449 (S.D.W.Va. Feb. 27, 2024) (there is no protected liberty interest in prerelease custody such as home confinement or RRC placement); Felton v. Janson, 2024 WL 4186071 (D.S.C. May 15, 2024) (judicial review of a BOP decision to deny an inmate early release is precluded by 18 U.S.C. § 3625).

The Petitioner's claim for the application of his "remaining FSA credits" towards his release to supervised release likewise fails. The BOP is barred by statute from applying more than one year of FSA credits towards the Petitioner's release to supervised release. 18 U.S.C. § 3624(g)(3). The Petitioner thus has no legitimate liberty interest in applying the excess FSA credits towards his release to supervised release. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (in analyzing a due process challenge, a court first asks "whether there exists a liberty or property interest of which a person has been deprived…."); see, e.g., Burton v. King, No. 5:22-hc-2003 (E.D.N.C. March 27, 2023) ("petitioner is not entitled to apply his additional FSA time credits to reduce his term of supervised release because the statute does not allow it"); Cheng v. United States, __ F.Supp.3d __, 2024 WL 1309016 (S.D.N.Y. March 26, 2024) (inmate who was subject to an immigration order of removal had no legitimate expectation in the application of FSA time credits for which he was ineligible under § 3632(d)(4)(E)(i)); Fischer v. Boncher, __ F.Supp.3d __, 2024 WL 3625424 (D. Mass. Aug. 1, 2024) (inmate who was convicted of brandishing a firearm during a crime of violence was statutorily ineligible to receive FSA time credits, and therefore, he had no liberty interest in them). Accordingly, the Petitioner cannot demonstrate that he is being held in custody "in violation of the Constitution

13

Case 3:23-cv-00832-MR   Document 9   Filed 10/21/24   Page 13 of 17

or laws or treaties of the United States" for purposes of § 2241. See 28 U.S.C. § 2241(c)(3).

The Petitioner's equal protection claim also fails. The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Where there is no suspect class or fundamental right, a challenge must show that there is no rational relationship between the disparity of treatment and some legitimate governmental purpose. Heller v. Doe, 509 U.S. 312, 320 (1993). The Petitioner contends that he is part of a protected class because he was placed on home confinement under the CARES Act, and that members of this subgroup are being denied equal protection "because of the 12 month Supervised release restriction where a regular inmate that has general Good Behavior credits applied has an unlimited access to utilize those credits towards early Supervised release." [Doc. 6 at 6-7]. These vague and conclusory allegations do not demonstrate that the Petitioner is

14

the member of a protected class, or that he is being discriminated against. See generally Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) ("Prisoners are not a suspect class") (citation omitted); Heller, 509 U.S. 320.

Finally, the Petitioner requests the appointment of counsel. It is well settled that there is no constitutional right to appointment of counsel in a habeas case. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). A court may appoint counsel in a § 2241 proceeding when the interests of justice so require. 18 U.S.C. § 3006A(a)(2)(B). The appointment of counsel for a qualifying party is required if counsel is necessary for effective discovery or if an evidentiary hearing is needed. See 28 U.S.C. foll. § 2254, Rules 6(a), 8(c); see also Rule 1(a), (b), 28 U.S.C. foll. § 2254 (a district court may apply the rules for § 2254 proceedings to habeas petitions other than those filed under § 2254). Further, the Fourth Circuit recently explained in a § 1983 action that a district court must conduct a fact-specific inquiry in analyzing whether a case presents exceptional circumstances that requires the appointment of counsel. Jenkins v. Woodard, 109 F.4th 242, 247 (4th Cir. 2024). The existence of exceptional circumstances in each case "hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). To make this determination, a court must collectively assess "(1) whether the plaintiff asserts a claim that is not

frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities." Jenkins, 109 F.4th at 248 (citing Brock v. City of Richmond, 983 F.2d 1055, 1055 (4th Cir. 1993) (per curiam)). "The district court's failure to make these assessments is legal error." Id. Where a pro se plaintiff presents a colorable claim but "lacks the capacity to present it" in light of the objective complexity of the claim and the plaintiff's subjective abilities, the case presents "exceptional circumstances." Id. at 247 (quoting Whisenant, 739 F.2d at 162).

Here, the Petitioner argues that the Court should "appoint Mr. Hubbard counsel to argue this motion as it is a first impression case in the District and Circuit." [Doc. 6 at 8]. However, the Court already has determined that discovery is not required, that an evidentiary hearing is not warranted, and that the matter can be resolved on the governing case law and on the record before the Court. The Petitioner's straightforward claims do not require specialized legal expertise or any other particular skills to present. Accordingly, the appointment of counsel is not required by the applicable Rules. The Petitioner has failed to demonstrate the existence of exceptional circumstances, and appointing counsel would not serve the interests of

justice. The Petitioner's request for the appointment of counsel is, therefore, denied.

In short, the Petitioner has failed to demonstrate any basis for § 2241 relief, that he is entitled to judgment as a matter of law, or that the appointment of counsel is warranted. Accordingly, the § 2241 Petition, the Petitioner's Motion for Summary Judgment, and the Petitioner's request for the appointment of counsel are all denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. 1] is **DISMISSED AND DENIED**, and the Petitioner's Motion for Summary Judgment [Doc. 6] is **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: October 19, 2024

Martin Reidinger
Chief United States District Judge